## BERNICE TODD v. STATE.

No. A-10580.   Aug. 21, 1946.

(172 P. 2d 345.)

Robt. W. Hoyland, of Guthrie, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Ewing C. Sadler, Asst. Atty. Gen., and Hugh Adams, Co. Atty., of Guthrie, for defendant in error.

JONES, P. J. The defendant, Bernice Todd, was charged in the district court of Logan county with the crime of rape in the first degree, was tried, convicted of assault with intent to commit rape, and was sentenced to serve two and a half years in the State Penitentiary, and has appealed.

The proof of the state shows that the prosecuting witness, Gloria Mae Mallatt, was 17 years of age and living at the farm home of her parents near Crescent when the offense was alleged to have been committed on October 24, 1943. She was alone in her house working about 3 o'clock in the afternoon. Her parents were both working in the field a quarter of a mile or more from their house. A brother-in-law of the defendant, Melvin Houck, was employed by Mr. Mallatt to assist in the farm work. During the noon hour, the defendant came to the Mallatt farm and took Melvin Houck to the town of Crescent with him for the purpose of having Houck assist him in obtaining a farm for the defendant's use the following year.

The testimony showed that these men returned to the Mallatt farm about 3 o'clock, and they had each been drinking. The parties working in the field were out of drinking water, and the defendant volunteered to go to the well in the north field to get some water for them. Instead of going to the well in the north field, the defendant took the water jug and went to the farm home where the prosecuting witness was doing some house work.

According to the testimony of the prosecutrix, the defendant made improper suggestions to her and she commenced to beg him to leave, that she walked out of the house and defendant followed her, that the defendant told her that her father wanted her to come over in the field and tried to get her to get in the car with him, but that she refused. That the defendant then got into his car and started the motor to leave, and she went back in the house and locked the front screen door and she heard defendant's car leave. That she went back to the kitchen to continue her work, and in just a few minutes the defendant came to the back door, entered the house 'and started struggling with her. The prosecuting witness broke away from him and started screaming and running toward the front door, but was caught by defendant in the front room. That defendant overpowered her and threw her on the floor and choked her; that he tore her slacks from her, at which time she fainted. That when she revived, defendant was getting up off her. That just before she fainted, the defendant was attempting to have sexual intercourse with her. That her privates were hurting when she regained consciousness and she had a secretion on her. That the defendant then told her that if she ever told anyone what happened, he would get her if it was ten years later. That as quickly as the defendant left, she went to the field and reported to her father

and mother, that her mother gave her a douche and put her to bed and called the doctor. She remained in bed for four days as she was sore all over, her back was hurt and she was very nervous.

She further testified that she had seen the defendant before and knew who he was, that the defendant had an odor of whisky about him and that she was scared of him.

The father and mother of the complaining witness corroborated the story of the complainant as to her physical condition and as to the fact that her slacks had been torn.

The doctor testified that his physical examination showed that she had bruises on her neck and legs and inflammation of the vulva, which indicated to him that there had been a penetration.

On his own behalf the defendant testified that when he and Melvin Houck went to town they purchased two pints of whisky and drank it; that he became drunk; that when he went to the farm home after water he saw the prosecutrix and was talking to her about an acquaintance of hers who was in the army at Enid. That she said, "I used to go with him," and defendant said, "They tell me he is a going thing." The prosecutrix replied, "Yes, he sure is." That he said, "Well, I believe I might go a little. How about us going?" and she said, "Come on in the house." That they went in the house and laid down by the door where they could see if any one approached. That they hugged and kissed for a while, but that when he attempted to have sexual intercourse with her he could not because he was too drunk. That he finally got up and she agreed to meet him in Crescent on Saturday. He de-

nied tearing the prosecutrix's slacks, but said that she voluntarily undressed herself.

The above summary of evidence shows that there is a sharp dispute between the prosecutrix and the defendant as to what occurred, but the evidence of the state, if believed by the jury, is sufficient to sustain the conviction.

As to the contention of defendant that he was denied a fair trial because of certain questions asked by the county attorney, the record discloses the following:

"Q. Mr. Mallatt, since this charge has been pending against Mr. Todd, charging him with raping your daughter, did he or anyone in his behalf make you a proposition to drop the case? By Mr. Hoyland: Objected to as incompetent, irrelevant and immaterial, not tending to prove or disprove anything in this case. By the Court: Sustained at this time. By Mr. Adams: Exception. * * Q. You made a proposition to Mr. Mallat, didn't you? A. No, sir. Q. On behalf of Mr. Todd? A. No, sir. By Mr. Hoyland: Object to that as incompetent, irrelevant and immaterial. By the Court: Sustained. * * * Q. You were fined over in Kingfisher county for breach of the peace, weren't you? A. No, sir, I was not. Q. On the 30th day of July, 1941? A. No, sir, I was not. Q. You have forgotten that, too, have you? A. No, sir, I haven't forgotten it. I wasn't fined. Q. You were arrested over there and put in jail on a bogus check charge? A. No, sir, I was not. By Mr. Hoyland: Objected to as improper, highly improper. By the Court: Sustained, gentlemen of the jury, you will not consider those questions and answers."

No motion for mistrial on account of the alleged misconduct of the county attorney in asking the questions was ever made, and no further record pertaining to this

assignment of error was made other than that above recited.

This court has many times held that absolute fairness must govern the trial and the prosecuting attorney should not ask known incompetent questions in the hearing of jury for the purpose of prejudicing the defendant in the eyes of the jury. Watson v. State, 7 Okla. Cr. 590, 124 P. 1101; Cline v. State, 57 Okla. Cr. 206, 47 P.2d 191; Hager v. State, 10 Okla. Cr. 9, 133 P. 263; Blackwell v. State, 82 Okla. Cr. 390, 171 P.2d 634.

The record above quoted shows that the trial court promptly sustained the objection of counsel for defendant and admonished the jury not to consider the questions and answers. In order to have properly preserved the record for presentation on appeal, counsel for defendant should have moved for a mistrial and saved his exception if the court denied the motion. The question now raised was not presented to the court by motion for mistrial during the course of the trial, nor was it incorporated in one of the assignments of error presented by the motion for new trial. Under such circumstances, and in view of the whole record, this assignment may not now be sustained.

In the petition in error attached to the case-made, counsel contends that the court erred in giving certain instructions. This assignment is not argued in the brief. We have read all of the instructions which were given by the court. There are no exceptions saved to the giving of any of them and no request was made for the giving of any additional instructions. The instructions as given seem to fairly and clearly state the law as applicable to the evidence in the case, and we are unable to perceive any error in any of them.

It is next contended that the court erred in submitting the issue of assault with intent to commit rape for the reason that such crime is not an included offense under the charge of rape in the first degree by force. No authority is cited in the brief to support this contention.

22 O.S.1941 § 916 provides:

"The jury may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged, or of an attempt to commit the offense."

In Coffe v. State, 59 Okla. Cr. 121, 56 P. 2d 1194, it is held:

"In a prosecution for rape committed by force overcoming resistance, under the evidence it was the duty of the trial court to instruct the jury on the law of the included offense of assault with intent to commit rape."

In the instant case there was abundant proof that the defendant was guilty of the included offense of assault with intent to commit rape, although he might not have been guilty of actual penetration.

An assault with intent to commit rape includes every element of the crime of rape with force overcoming resistance, except penetration. Fannin v. State, 65 Okla. Cr. 444, 88 P.2d 671.

In Kilpatrick v. State, 71 Okla. Cr. 129, 109 P.2d 516, the conviction of the defendant was reversed for failure of the trial court to submit the issue of assault with intent to commit rape in a prosecution for rape in the first degree by force overcoming the resistance of the prosecutrix.

The instructions of the court should always be applicable to the evidence. Even under the evidence of the prosecutrix the jury could have concluded that the defendant did not actually commit the crime of rape because she stated that she fainted before the act was committed, and that when she revived, defendant was on his feet pulling up his clothes. It was brought out on cross-examination of the doctor that the tenderness and soreness in the private parts of the prosecutrix could have been caused by the insertion of the hard rubber nozzle on the douche which was given to her by her mother after the alleged attack occurred.

A careful examination of the entire record shows that the defendant had a fair and impartial trial, and there are no substantial errors which would require a reversal of the judgment of conviction or a modification of the sentence imposed by the jury.

The judgment of the district court of Logan county is accordingly affirmed.

BAREFOOT, J., concurs. DOYLE, J., not participating.